UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID STEPHENS,

                Petitioner,

        V.

SUPERINTENDENT,

               Respondent.
_____

**REPORT AND
RECOMMENDATION**

04-CV-1443
(TJM/VEB)

## I. INTRODUCTION

Petitioner David Stephens, represented by Theresa M. Suozzi, Esq., commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. According to the New York State Department of Correctional Services website[1], Petitioner was released from prison on June 28, 2007. In 2000, he was convicted in a New York State court of Sexual Abuse in the First Degree and Assault in the Third Degree. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 17).

## II. BACKGROUND

**A.**    **Facts**

_____

[1] http://nysdocslookup.docs.state.ny.us/

The following factual summary is derived from the state court records.  On March 7, 2000, Victim[2] was leaving her workplace in Albany and walking to pick up her child from daycare.  On her way to pick up her daughter, Victim encountered Petitioner.  (T at 306-310).[3]  Victim then entered an underground elevator. (T at 310-313).  Petitioner followed her onto the elevator and before the elevator doors closed, he reached under her skirt, grabbed her genital area, and pulled her forward.  (T at 313-317).  Victim fell to her knees on the grooves in the open elevator door, injuring her knees.  (T at 317-318).  When Victim fell and screamed, Petitioner ran away.  (T at 318).

After she picked her daughter up from daycare, Victim filed a police report and gave a description of her assailant.  (T at 256-259, 321-325).  A few weeks later, Petitioner was arrested.  (T at 264-266).

Thereafter, an Albany County Grand Jury returned Indictment Number 8/6311, which charged Petitioner with one count of Sexual Abuse in the First Degree, in violation of New York Penal Law ("NYPL") §130.65(1)[4] and one count of Assault in the Second Degree, in violation of NYPL §120.05(2).

**B.    State Trial Court Proceedings**

The Honorable Dan Lamont, Albany County Court Judge, presided over Petitioner's trial proceedings.  The trial began on October 30, 2000, and ended on November 1, 2000.

---

[2]In accordance with N.Y. Civil Rights Law § 50-b, in order to preserve the privacy of the victim, this Court will refer to the victim as "Victim.

[3]References preceded by "T" are to the transcript pages of Petitioner's trial.

[4]Unless otherwise indicated, all references to the NYPL are to McKinney 1998.

Petitioner was represented by Raymond A. Kelly, Esq. of the Albany County Public Defender's office.  At the conclusion of the trial, the jury found Petitioner guilty of Sexual Abuse in the First Degree and the lesser-included offense of Assault in the Third Degree. (T at 681).

On January 5, 2001, Petitioner was sentenced to a determinate term of seven years imprisonment for his conviction of Sexual Abuse in the First Degree and a concurrent, determinate term of one year imprisonment for his conviction for Assault in the Third Degree. (S at 25-26).[5]  Therefore, Petitioner's total aggregate sentence was seven years.

**C.     State Appellate Proceedings**

Petitioner, represented by Eugene P. Devine, Esq. and Theresa M. Suozzi, Esq., appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court.  Petitioner asserted four arguments before the Appellate Division: (1) that he was deprived of a fair trial when the Prosecutor referred to him as a sexual predator in both opening and closing remarks; (2) that his conviction should be overturned due to the trial court's failure to give a proper curative instruction upon learning of a juror's misconduct; (3) that the evidence presented at trial was legally insufficient to support Petitioner's conviction; and (4) that the sentence imposed was harsh and excessive.

In a decision issued on December 4, 2003, the Appellate Division affirmed Petitioner's conviction.  People v. Stephens, 2 A.D.3d 888 (3d Dep't 2003). Petitioner's application for leave to appeal to the Court of Appeals was denied on March 25, 2004.

---

[5]References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

People v.Stephens, 2 N.Y.3d 739 (2004).

**D.   Federal Habeas Corpus Proceedings**

Petitioner, represented by Theresa M. Suozzi, Esq., commenced this action on December 13, 2004, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1).  Petitioner asserts the same four grounds for relief that he did before the Appellate Division. Respondent filed a Response and memorandum of law in opposition to the Petition.  (Docket Nos. 11 & 12).

For the reasons discussed below, the Petition should be DENIED.

**III. DISCUSSION**

**A.       Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

4

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), and AEDPA requires a Petitioner to rebut that presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002).  A presumption of correctness applies to findings by both state trial and appellate courts.  Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law.  A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts."  Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case."  Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.      Petitioner's Claims**

**1.      Effect of Release**

As a threshold matter, it should be noted that this Court has jurisdiction over this proceeding even though Petitioner has been released from incarceration.[6]   In Carafas v. La Vallee, the collateral consequences of the petitioner's conviction led the Supreme Court to hold that the case had not been rendered mooted by his release from incarceration after he had filed his habeas petition. See 391 U.S. at 237.

The Supreme Court stated that "[b]ecause of these 'disabilities or burdens (which) may flow from petitioner's conviction, he has 'a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him.' ... On account of these 'collateral consequences,' this case is not moot." Id. at 237-38 (quotations and footnote omitted). The Supreme Court concluded that "under the statutory scheme, once the

---

[6]As noted above, according to the New York State Department of Correctional Services website, Petitioner was released from prison on June 28, 2007.

6

federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." Id. at 237-38 (emphasis supplied).

Petitioner was incarcerated at the time of filing his petition and therefore federal jurisdiction attached and remains until the completion of these proceedings.  As set forth above, Petitioner asserts four claims for habeas relief.  This Court will address each claim in turn.

### 2.      Prosecutorial Misconduct

In Petitioner's first claim for habeas relief, he argues that the prosecutor improperly referred to him as a "sexual predator" in opening and closing remarks.  (Docket No. 1 at 5). Petitioner argues that no limiting instruction could have corrected that error and therefore a mistrial should have been granted.  Respondent argues that this claim is without merit.

Petitioner raised this claim on direct appeal before the Appellate Division.  When addressing this claim, the Appellate Division found that "defendant was not substantially prejudiced or deprived of a fair trial by the prosecutor's single opening statement reference to him as a 'sexual predator' and, in closing, as a 'predator.'" People v. Stephens, 2 A.D.3d at 890 (citing cases).  The Appellate Division went on to hold that:

> Although the prosecutor's characterizations were clearly inappropriate, Supreme Court emphatically directed the jury in each instance to disregard them, noting that the comments were improper and there was but "one allegation of one event before this jury," ameliorating the prejudice, and no request was made for a further curative instruction. Thus, the court properly denied defendant's mistrial motions based on these two remarks.

Id.

The habeas court's scope of review as to claims of prosecutorial misconduct is quite

7

limited.   In order to overturn a conviction, the Court must find that the prosecutor's comments constituted more than mere trial error and instead were so egregious as to violate the petitioner's due process rights. See Donnelly v. DeChristoforo, 416 U.S. 637, 647-48 (1974); Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir.1990) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.") (internal quotation marks and citations omitted); accord Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir.1998).

Thus, to be entitled to relief, Petitioner must show that he "'suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.' " Tankleff, 135 F.3d at 252 (quoting Bentley v. Scully, 41 F.3d 818, 823 (2d Cir.1994) (internal quotation marks and citation omitted in original)). "Rarely are comments in a prosecutor's summation 'so prejudicial that a new trial is required.' " United States v. Germosen, 139 F.3d 120, 128 (2d Cir.1998) (quoting United States v. Forlorma, 94 F.3d 91, 93 (2d Cir.1996) (quotations omitted).   Reversal of a defendant's conviction is warranted only where " 'the statements, viewed against the entire argument before the jury, deprived the defendant of a fair trial.' " Id. (quoting Forlorma, 94 F.3d at 94).

In determining whether a defendant has suffered actual prejudice as a result of the prosecutorial misconduct, the reviewing court considers three key factors: "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." Floyd, 907 F.2d at 355 (quoting United States v. Modica, 663 F.2d 1173, 1181 (2d Cir.1981) (per curiam)); accord, e.g., Germosen, 139 F.3d at 128; United States v. Miller, 116 F.3d 641, 683 (2d Cir.1997); United States v.

8

<u>Perez</u>, 144 F.3d 204, 209 (2d Cir. 1998).

In the present case, two statements are at issue.  In the very beginning of his opening statement, the prosecutor said "[t]his case is about a sexual predator, David Stephens."  (T at 241).  Petitioner's trial counsel objected and made an oral motion for mistrial.  (T at 241).  The trial court denied the motion and directed the jury to disregard the comment.  (T at 242).  During summation, the prosecutor reminded the jury that "[i]n my opening I used the word 'predator.'"  (T at 509).  Petitioner's trial counsel again objected and moved for a mistrial.  The trial court denied the motion and instructed the jury as follows:

> [A]s I told the jury then and I emphatically direct you to disregard the name calling.  You just can't – its improper.  You can describe what you say you proved he did on that day, but I sustain the objection and direct the jury to disregard it.

(T at 509-10).

This Court finds that the prosecutor's statements were plainly improper.  <u>See</u>, <u>e.g.</u>, <u>United States v. Young</u>, 470 U.S. 1, 7 n. 5, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) ("The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury"); <u>United States v. Modica</u>, 663 F.2d 1173, 1180 (2d Cir.1981) ("It is fundamental to sound procedure in federal criminal prosecutions that counsel refrain from appeal wholly irrelevant to any facts or issues in the case, the purpose and effect of which could only be to arouse passion and prejudice").  Moreover, the statement during summation was particularly egregious given the trial court's prior ruling that the use of the word "predator" was improper.

However, for the following reasons, this Court finds that Petitioner has not established that the Appellate Division's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A prosecutor's reference to a defendant as a "sexual predator" does not justify habeas relief where, as in the present case, the reference was an "isolated, aberrant incident of prosecutorial misconduct in an otherwise fair proceeding." Rasmussen v. Filion, No. 01-CV-6215P, 2005 WL 318816, at *9 (W.D.N.Y. Feb. 9, 2005); Osorio v. Conway, 496 F.Supp.2d 285, 301 (S.D.N.Y. 2007) ("Courts will not find prejudice where the prosecutor's offending comments were simply an 'aberration in an otherwise fair proceeding.'"); Stone v. Stinson, 121 F. Supp.2d 226, 243 (W.D.N.Y. 2000) ("No matter how improper the prosecutor's comments were, the only concern of the court in reviewing a claim of prosecutorial misconduct on a federal habeas petition is the fundamental fairness of the trial.").

Further, as the Second Circuit has noted, "[o]ften, the existence of substantial prejudice turns upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if proof of guilt is weak, then improper statements are more likely to result in reversal." Modica, 663 F.2d at 1181, see also, Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994)(holding that review of a habeas corpus challenge based upon prosecutorial misconduct includes consideration of "whether the conviction was certain absent the prejudicial conduct.").  Notwithstanding this finding, the Court condemns the prosecutor for his apparently defiant and wholly inappropriate comments in this trial.  His first reference to the Petitioner as a "predator" could have been excused as an overenthusiastic approach to the case.  His second statement, however, after the trial court's first curative instruction, can only be viewed as

10

intentional misconduct.  The prosecutor is admonished and reminded of his ethical and moral duties to his office.  As the Second Circuit noted in <u>Modica</u>:

> 'The appellate tribunals have found to their dismay that they cannot uphold a conviction and yet successfully condemn the method by which it was secured. Carefully written opinions condemning the indiscretion and misconduct have not been successful to curb improprieties. The very act of upholding the conviction has given prosecutors approval, and the 'judicial slap on the wrist' has not deterred the prosecutor from his unethical and improper tactics.' <u>Modica</u>, 663 F.2d at 1183 (quoting Note, Prosecutor Indiscretion: A Result of Political Influence, 34 Ind.L.J. 477, 487 (1959)). Invoking the remedy of a new trial is not appropriate where, as here, 'the misconduct has not substantially prejudiced [the] defendant's trial.' <u>Id.</u> The Second Circuit has observed that '[r]eversal is an ill-suited remedy for prosecutorial misconduct; it does not affect the prosecutor directly, but rather imposes upon society the cost of retrying an individual who was fairly convicted.' <u>Modica</u>, 663 F.2d at 1184.

<u>Ware v. New York</u>, 412 F.Supp.2d 236, 246-47 (W.D.N.Y. 2005).

However, because the Court is only sitting in collateral review of this matter, it does not have the jurisdiction to judicially sanction a prosecutor or issue contempt penalties against him.  Therefore, the Court can only employ the power of words. The Court reminds the prosecutor that State and Federal trial courts are courts of law, with rules of evidence and conduct based on strong public policy considerations, carefully constructed and nurtured over the centuries by our forefathers and set forth in well-established time-tested rules and precedent; they are not television crime shows where theatrics and popular and entertaining misconduct are routinely scripted-where, in convicting the "bad guys," the ends justify the means.

Ironically, the evidence of guilt in this case was particularly strong.  Specifically, the prosecution presented eyewitness testimony from Victim, who testified that she clearly observed Petitioner at close range immediately prior to the attack- making the prosecutor's gratuitous and inexcusable remarks wholly unnecessary.  (T at 311-13).  Victim described in detail the nature of the crime and positively identified Petitioner.  (T at 311, 317-19).  After his arrest, Petitioner provided an alias to the police and made false statements concerning his whereabouts on the day of the arrest. (T at 264-68).

In light of the foregoing and given the strength of the prosecution's evidence, this Court finds that there is no indication that the prosecutor's isolated remarks had a substantial and injurious effect or influence in determining the jury's verdict.  Tankleff, 135 F.3d at 252.

Lastly, as noted above, the trial court twice sustained defense counsel's objection to the comment and instructed the jury to disregard the offensive remarks.  These instructions acted as a curative measure with respect to the prosecutor's remarks.  See Floyd, 907 F.2d at 355.  Further, the trial court instructed the jury at the close of proof on the prosecution's burden of proof beyond a reasonable doubt.  (T at   956).  There is a well-established presumption that jurors follow their instructions.  Zafiro v. United States, 506 U.S. 534, 540-41 (1993) (emphasizing that prejudice "can be cured with proper instructions and juries are presumed to follow their instructions") (internal quotation marks omitted)); United States v. Downing, 297 F.3d 52, 59 (2d Cir.2002) (stating that "[a]bsent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions.").

Accordingly, this Court finds that Petitioner is not entitled to relief based upon his prosecutorial misconduct claim and the claim should therefore be DISMISSED.

12

### 3.     Juror Misconduct

Petitioner's second claim for habeas relief is based upon an allegation of juror misconduct.

#### a.     Factual Background

The factual background with respect to this claim may be summarized as follows: During deliberations, Juror Number Six asked one of the court officers if she could speak with the judge. (T at 636). The court informed the attorneys for the respective parties and proposed that the juror be questioned on the record and in the presence of counsel. (T at 636-37, 640). Juror Number Six was thereafter escorted into an office adjacent to the courtroom, where she was questioned on the record in the presence of counsel and Petitioner. (T at 641).

Juror Number Six explained that one of the other jurors (Juror Number Seven) had stated that she had heard of Petitioner's case before trial and that a co-worker had been attacked in the vicinity of the incident in question. (T at 643-44). According to Juror Number Six, the other juror further stated that "since the defendant has been in prison or in jail . . . that those incidents have stopped occurring." (T at 643). Juror Number Six explained that she and other jurors interpreted Juror Number Seven's remarks as expressing a belief that Petitioner was guilty. (T at 644).

The prosecuting attorney asked Juror Number Six whether the comments affected her ability to decide the case fairly. (T at 645). Juror Number Six replied that they did not. (T at 645). Petitioner's trial counsel did not ask any questions.   When the trial court inquired about the reaction of the other jurors to the comments, Juror Number Six explained

that "a few jurors . . . told her that she shouldn't even be considering it." (T at 646).

Juror Number Six was then invited to leave the room and the trial court discussed how to address the situation with counsel.  All parties agreed that Juror Number Seven should be questioned regarding her comments.  (T a 649-52).  Petitioner's trial counsel agreed with the proposal and specifically declined to seek a mistrial based upon the comments.  (T at 651-52).  Specifically, Petitioner's trial counsel explained:

> I don't think there's any sense at this junction in having a mistrial declared at the expense and everything that's been involved here, but I think the Court can take appropriate steps at this juncture to cure and tell the other jurors that they are to confine themselves to their oaths as jurors and to follow the law in this case, which says that they must confine themselves to the evidence in the trial.

(T at 652).

Juror Number Seven was then brought into the office and questioned by the trial court.  She explained that she had "heard rumors about similar incidents" and stated that she had very few details.  (T at 655-59).  The juror did not offer any specifics concerning discussions she may have had relative to the rumored incidents.

After Juror Number Seven was excused, Petitioner's trial counsel asked the court "to bring the jury back . . . and give them a curative instruction that mere rumor, inuendo [*sic*], speculation is not part of legitimate jury deliberations." (T at 660).  The trial court then discussed the form and content of a curative instruction with the prosecutor and defense counsel.  (T at 660-666).  The prosecutor argued that a curative instruction was unnecessary and objected to the court giving such an instruction.  (T at 666).  The trial court overruled the objection and decided to give the curative instruction, as per the request of Petitioner's trial counsel.  (T at 667-68).

The jury was thereafter brought back into the courtroom, where the trial court gave

14

the following instruction:

> I told you in the Court's final charge that your verdicts today must be based upon the evidence in this case.  That is to say, first, the sworn testimony of all of the witnesses; second, any exhibits received in evidence; and third, such reasonable and logical inferences as you may draw from the facts as you find them to exist.  In other words, ladies and gentlemen, you must base your verdicts today upon the evidence of the lack or insufficiency of the evidence presented before you 12 jurors in this courtroom during this trial.  This, of course, means that you may not base your verdict in any part upon speculation, rumor, or inuendo [*sic*] or any other matters not introduced into evidence as part of the record in this courtroom before this jury.
>
> A jury is never permitted to consider or even discuss matters outside the record of the trial.  I remind you that our law requires the jury to confine its deliberations to a discussion of the evidence or lack or insufficiency of the evidence in the case.

(T at 668-669).

The jury was then excused and the trial court asked counsel whether they had any objection to the charge as given.  Petitioner's trial counsel stated that he believed "the charge as given was appropriate" and that "it handle[d] the situation that we are involved with here." (T at 670).

### b.    Procedural Bar

This claim was presented on direct appeal to the Appellate Division, which found the claim to be unpreserved and without merit.  Specifically, the court noted that Petitioner's trial counsel "participated in and assented to the court's inquiry of two jurors on the record to discern whether misconduct had occurred, expressly conceded that the curative charge thereafter given to the full jury was 'appropriate' and 'handles the situation,' and declined to make a mistrial motion or take exception to the charge, and never moved to discharge any of the jurors" Stephens, 767 N.Y.S.2d at 517.  As such, the court held that "any challenge to the jurors' qualifications or the adequacy of the curative instruction [was] not preserved." Id.

15

"Where the highest state court that rendered a judgment in the case 'clearly and expressly states that its judgment rests on a state procedural bar,' such procedural default constitutes independent and adequate state grounds to deny habeas relief." Corney v. Henri, 05-CV-338, 2007 WL 1388118, at *5 (N.D.N.Y. May 9, 2007) (quoting Harris v. Reed, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); see also Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir.1996); Levine v. Commissioner of Corr. Servs., 44 F.3d 121, 126 (2d Cir.1995).

In such cases, a federal court is generally barred from reviewing the petitioner's claims. A federal habeas court may review a procedurally barred claim if the petitioner demonstrates (1) cause for the default and resulting prejudice, or (2) that the failure to consider the claims will "result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991); see also Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

In the present case, the Appellate Division found that the juror misconduct claim had not been preserved for review.  In support of this conclusion, the court cited New York's contemporaneous objection rule.  Id. (citing CPL § 470.05).  Under the circumstances presented here, the Court finds that the Appellate Division's reliance on the contemporaneous objection rule was an "adequate" and independent state ground, it being "based on a rule that is 'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d. 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991)).

This Court, therefore, is barred from engaging in habeas review of this claim unless Petitioner shows "cause for the default and actual prejudice" or that a "fundamental

16

miscarriage of justice" will result from not considering the claim.  <u>Coleman</u>, 501 U.S. at 750.

In this context, "'cause' . . . must be something *external* to the petitioner, something that

cannot fairly be attributed to him." <u>Id.</u> at 753 (emphasis in original).

"Actual prejudice" requires "showing, not merely that the errors at [petitioner's] trial

created a possibility of prejudice, but that they worked to his *actual* and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions." <u>United States</u>

<u>v. Frady</u>, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (emphasis in original).

Petitioner has demonstrated neither cause nor prejudice.[7]

Furthermore, Petitioner has not made a colorable showing of actual innocence, as

he is required to do in order to benefit from the "fundamental miscarriage of justice"

exception. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 314-16, 115 S.Ct. 851, 130 L.Ed.2d 808

(1995). Because Petitioner has failed to make a sufficient showing to excuse the procedural

default, federal review of this claim is barred.

### c.   Merits of Claim

In the alternative, even if this Court were to consider the juror misconduct claim on

the merits, Petitioner would not be entitled to relief.  The Appellate Division also addressed

the merits of the claim, finding that the inquiry conducted by the trial court "provided no basis

upon which to sua sponte discharge the sworn juror . . . and the curative charge correctly

---

[7]Petitioner, who is represented by counsel in connection with this proceeding, has not offered any arguable cause to excuse the procedural default.  Moreover, even assuming *arguendo* that Petitioner's trial counsel erred by failing to object to the curative instruction and/or failing to request a discharge of Juror Number 7, the alleged ineffective assistance of counsel may only constitute "cause" sufficient to overcome a procedural bar where the ineffective assistance claim is itself not procedurally barred.  <u>See</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 488-89 (1986) ("[E]xhaustion doctrine ... generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.").  In the present case, no claim of ineffective assistance of counsel was raised either on direct appeal or in the Petition.

directed the jury to base its verdict solely on the trial evidence." Stephens, 767 N.Y.S.2d at 518 (internal citations omitted).

The Second Circuit has explained that the trial court has "wide discretion" in determining how to pursue an inquiry into the effects of extra-record information upon a jury. United States v. Chang An-Lo, 851 F.2d 547, 558 (2d Cir.1988) (citing United States v. Hillard, 701 F.2d 1052, 1064 (2d Cir. 1983); see also United States v. Feldman, 299 F.2d 914, 917 (2d Cir.1962) (stating that judge has "large discretion" in such matters) (citing Holt v. United States, 218 U.S. 245, 251, 31 S.Ct. 2, 54 L.Ed. 1021 (1910)).

The Supreme Court has instructed that the action to be taken with respect to jurors who have considered information outside of the scope of the trial evidence in "each case must turn on its special facts." Marshall v. United States, 360 U.S. 310, 312, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959).

While the alleged juror misconduct, if true, was a troubling breach of a juror's duties and exceptionally prejudicial inasmuch as the information available to the trial court and counsel was that she allegedly related to other jurors she had heard of Petitioner's case before trial and that a co-worker had been attacked in the vicinity of the incident in question and "since the defendant has been in prison or in jail . . . that those incidents have stopped occurring," in the present case, the Appellate Division concluded that the trial court had appropriately exercised its discretion by conducting a thorough inquiry into the potential juror misconduct and then crafting and delivering a curative instruction based upon input from defense counsel.

This Court finds that Petitioner has failed to demonstrate that the Appellate Division's decision in this regard was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See, e.g. Brown v. Greiner, No. 02-CV-2043, 2003 WL 22964395, at *14 (E.D.N.Y. Oct. 2, 2003) (finding that juror's "isolated remark," while improper, "was not sufficiently serious to have denied petitioner a fair trial"); Augustine v. Walker, 98-CV-0771, 2001 WL 1860883, at *6 (N.D.N.Y. Jun. 12, 2001) (holding that petitioner was not entitled to relief based upon juror misconduct claim because he "failed to demonstrate that the conduct of the jury affected its verdict or otherwise prejudiced [him]"); Zafiro v. United States, 506 U.S. 534, 540-41 (1993) (emphasizing that prejudice "can be cured with proper instructions and juries are presumed to follow their instructions").

Accordingly, Petitioner's claim of juror misconduct should be DISMISSED.


### 4. Harsh and Excessive Sentence

In Petitioner's third claim for habeas relief, he asserts that he received the maximum sentence authorized by law and it was therefore, harsh and excessive. He claims that his background and education warranted a lesser sentence. Respondent argues that this claim is not cognizable on habeas review.

A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. White v. Keane, 969 F.2d 1381, 1383 (2d Cir.1992). A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal

claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing Townsend v. Burke, 334 U.S. 736, 741 (1948)("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")).

In this case, Petitioner does not even contend that he was sentenced outside the statutory limits.   Rather, he asserts that he deserved some leniency.   In any event, Petitioner's sentence was within the statutory limits as he was convicted of Sexual Abuse in the First Degree, which is a class D violent felony and therefore, he could be sentenced anywhere from two to seven years imprisonment.   NYPL §§ 130.65(1), 70.02(1)(c), 70.02(3)(c).   Petitioner's sentence, for this conviction, of seven years was within the statutory limit.

Petitioner's other conviction for Assault in the Third Degree is a class A misdemeanor, punishable by up to five years in prison.   NYPL §§ 120.00, 70.15(1). Petitioner received a determinate concurrent sentence of one year for this conviction, which was well withing the statutory range.

Accordingly, Petitioner's claim for habeas relief based upon a theory of harsh and excessive sentence should be DISMISSED.


5.     **Weight/Sufficiency of the Evidence**

In Petitioner's fourth claim for habeas relief, he argues that with respect to his conviction for Sexual Abuse in the First Degree, his verdict was against the weight of the evidence.   Respondent asserts that a "weight of the evidence" claim is not cognizable on

20

habeas review and in any event, a sufficiency of the evidence claim is without merit.

"Weight of the evidence" claims derive from New York Criminal Procedure Law ("CPL") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. Crim. Proc. Law § 470.15(5); People v. Bleakley, 69 N.Y.2d 490, 495 (1987).  Since weight of the evidence claims are grounded in the state criminal procedure statute, they are not cognizable on habeas review. See 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (habeas corpus review not available to remedy alleged error of state law); Hogan v. Livingston Corr. Fac., No. 05-CV-6440, 2007 WL 2907322, at *8 (W.D.N.Y. Oct. 3, 2007)("Since a 'weight of the evidence' claim is purely a matter of state law, it is not cognizable on habeas review."); Stein v. Artus, No. 04-CV-0439, 2007 WL 2778914, at *7 (N.D.N.Y. Sept. 19, 2007)(same); Welch , 2007 WL 2028048, at *7.   Therefore, to the extent that Petitioner is arguing his conviction is against the weight of the evidence, such a claim is not cognizable on federal habeas review and must be dismissed.  See, e.g., Ex parte Craig, 282 F. 138, 148 (2d Cir.1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence ..."), aff'd, 263 U.S. 255, 44 S.Ct. 103, 68 L.Ed. 293 (1923); Garrett v. Perlman, 438 F.Supp.2d 467, 470 (S.D.N.Y.2006) (same); Douglas v. Portuondo, 232 F.Supp.2d 106, 116 (S.D.N.Y.2002) (same); Garbez v. Greiner, No. 01 Civ. 9865, 2002 WL 1760960, at *8 (S.D.N.Y. July 30, 2002).

With respect to Petitioner's argument that there was legally insufficient evidence to

21

convict him, a habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden."  Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted).

A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (1979) (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)).  Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at 179 ("[W]e review the evidence in the light most favorable to the State and [hold that] the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

In the present case, Petitioner argues that Victim's testimony was "highly unbelievable and speculative" because over a month passed before she identified Petitioner and because there were no other eye witnesses.  (Docket No. 1 at 6).  He also argues that because he did not touch Victim beneath her clothing he should not have been found guilty of Sexual Abuse.  (Id.).  As noted above, Petitioner's conviction was for Sexual Abuse in the First Degree and Assault in the Third Degree.  Petitioner makes no specific allegations with

respect to his Assault in the Third Degree conviction and the Appellate Division found the evidence supporting that conviction to be sufficient.  Therefore, this Court will address the legal sufficiency of the evidence supporting Petitioner's conviction for Sexual Abuse.

### a.    Sexual Abuse

As set forth above, the jury convicted Petitioner of Sexual Abuse in the First Degree. The Appellate Division rejected Petitioner's contention that the verdict with respect to this charge was against the weight of the evidence. Stephens, 2 A.D.3d at 889.

Under the New York Penal Law, "[a] person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . .by forcible compulsion."  N.Y.P.L. § 130.65(1).  "'Sexual contact' means any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party. It includes the touching of the actor by the victim, as well as the touching of the victim by the actor, whether directly or through clothing."  N.Y.P.L. § 130.00(3).  "'Forcible compulsion' means to compel by either use of physical force" or by threat.  N.Y.P.L. § 130.00(8).

The evidence at trial established that Petitioner was in the vicinity of the crime at the time of the attack. (T at 263, 277-78, 390-407).  Additionally, the prosecution presented eyewitness testimony from Victim, who testified that she clearly observed Petitioner at close range immediately prior to the attack.  (T at 311-13).  Victim positively identified Petitioner and described in detail that Petitioner forcibly grabbed her genital area, causing her to fall to her knees. (T at 311, 317-19).  After his arrest, Petitioner provided an alias to the police and made false statements concerning his whereabouts on the day of the arrest. (T at 264-68).

Petitioner's argument that the evidence was insufficient because he did not touch Victim beneath her clothing is unavailing as the statute clearly sets forth that touching through clothing constitutes "sexual contact." N.Y.P.L. § 130.00(3). Additionally, with respect to Petitioner's argument that Victim's testimony was speculative and unbelievable, credibility determinations are the province of the jury and not that of the habeas court. See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; stating that it must defer to the jury's assessments of both of these issues); Webster v. McCoy, 03-CV-00440, 2007 WL 2292994, at *2 (N.D.N.Y. Aug 6. 2007) ("Where, as in this case, the question is one of credibility, the finding of the jury carries the day.").

Therefore, viewing the evidence in the light most favorable to the prosecution, Petitioner's claim for habeas relief based upon a theory of insufficient evidence should be DISMISSED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends David Stephens' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that the Petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

24

Victor E. Bianchini
United States Magistrate Judge

DATED:      January 23, 2008

            Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1),

25

Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

January 23, 2008

Victor E. Bianchini
United States Magistrate Judge